THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LISA L. REGAN,

     Plaintiff,

   vs.

LAW OFFICES OF EDWIN A.
ABRAHAMSEN & ASSOCIATES, P.C.
and COMMONWEALTH FINANCIAL
SYSTEMS, INC.,

     Defendants.

CIVIL ACTION NO. 08-CV-5923(WY)

## ORDER

AND NOW, this __ day of _____, 2009, having considered Defendants' Motion for

Summary Judgment (Doc. No. 13) and Plaintiff Lisa Regan's Response in Opposition thereto

(Doc. No. __), it is hereby ORDERED that said Motion is DENIED.

Further, having considered Plaintiff's Cross-Motion for Summary Judgment (Doc. No.

__) and Defendants' Response in Opposition thereto, it is hereby ORDERED that said Motion is

GRANTED as to liability.  This matter shall proceed to trial on damages.


BY THE COURT:


WILLIAM H. YOHN, JR.,  U.S.D.J.

clf\regan-abrahamsen\pleadings\pl's response to defts' stmt of mateial facts.doc

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA L. REGAN,<br><br>                    Plaintiff,<br><br>          vs.<br><br>LAW OFFICES OF EDWIN A.<br>ABRAHAMSEN & ASSOCIATES, P.C.<br><br>And<br><br>COMMONWEALTH FINANCIAL<br>SYSTEMS, INC.,<br>                         Defendants. | CIVIL ACTION NO. 08-CV-5923(WY) |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

Plaintiff responds to Defendants Law Offices of Edwin A. Abrahamsen & Associates, P.C. ("Abrahamsen") and Commonwealth Financial Systems, Inc. ("CFS") Statement of Material Facts in Support of Defendants' Motion for Summary Judgment:

1.    Admitted that Abrahamsen purports to be a law firm engaged in the collection of consumer debt.  Plaintiff does not know when it was established.

2.    Admitted. CFS is a debt collector as defined under the FDCPA, 15 U.S.C. §16929a)(6).

3.    Admitted.

4.    Denied as stated.  Defendants have refused to produce the contract despite Plaintiff's repeated requests for the same.

5.    Admitted that Abrahamsen uses collection software provided by Commercial Legal Software to manage it collection accounts.  Otherwise paragraph 5 is denied.  Ratchford

lacks personal knowledge or expertise regarding collection industry software. Ratchford was not sure of the actual name of the company and was not involved in the decision to purchase the software. (Ex. B, Ratchford dep., pg. 26).[1]

6.      It is admitted that Abrahamsen used Global Connect. Otherwise, paragraph 6 is denied as stated. Attorney Ratchford testified that he would build a list of accounts to be auto-dialed, import the list into Global Connect and then schedule the calling. (Ex. B, Ratchford dep., pg. 35-36).

7.      It is admitted that CFS obtained judgments by default against Plaintiff on two accounts it purchased. (Ex. A, Cobb dep. pg. 32-33). The judgments were then placed with Abrahamsen for collection and assigned account numbers 06-02263 and 06-02273 according to Abrahamsen's records. (Ex. A, Cobb dep., pg. 54-55, Ex. K). Abrahamsen has refused to turn over its agreement with CFS to collect the accounts.

8.      Admitted.   Plaintiff further states that Attorney Bass sent Abrahamsen a letter on February 2, 2007 advising that he represented Plaintiff Lisa Regan. (Ex. J).

9.      Denied. According to Stevan Goldman, the owner of CLS and the developer of the collection software, the software does not come programmed with any codes. The codes must be assigned by the user. (Ex. M, Goldman dep., pg. 14). Abrahamsen, at some point, assigned diary code 501 to mean represented by counsel. (Ex. K). Abrahamsen does not immediately enter a represented by counsel diary code when notified that a consumer is represented by counsel. (Ex. K). The use of a represented by counsel diary code will not prompt the system to cease making calls and sending letters. (Ex. M, Goldman dep, pg. 61, 67, 71).

10.      Denied. According to Abrahamsen's account notes, Plaintiff's accounts were not

---

[1] The citations to the record are found in Plaintiff's Counter-Statement of Material Facts filed herewith.

marked with diary code 501 in May 2007; it was not assigned until May 2008. (Ex. K).

11.    Admitted for purposes of this Motion only.

12.    Admitted that CLS provides training. (Ex. M, Goldman dep, pg. 110-111). Denied that Scavone received "significant training".

13.    Denied. According to the account notes, on May 12, 2007, Scavone deleted code 502 designated as a represented by counsel code, then added code 109 designated as a partial payment arrangement. (Ex. K). According to Goldman, it was not necessary for Scavone to delete the represented by counsel code to enter the payment code or advance the account. (Ex. M, Goldman dep., pg. 56). The collection software can provide a monthly prompt/reminder that a payment is due on accounts. (Ex. M, Goldman dep., pg. 19-20). Scavone did not act unintentionally or by mistake; it was a conscious, intentional act to delete the counsel code. (*See* Ex. M, Goldman dep., pg. 54-56, 58).

14.    Denied. It is denied that Scavone committed a "clerical error" or that the so-called "error" was mistaken or unintentional. Abrahamsen previously admitted that its conduct violated the FDCPA. (Defs. Br. at pg. 5).

15.    Denied. Scavone did not have to advance the code and Abrahamsen failed to use features available to it to prevent the deletion or indicate that Plaintiff was represented by counsel. (Ex. M, Goldman dep., pg. 23-24, 26, 29-31, 33, 54-56, 58).

16.    Denied. The deletion of the counsel code by Scavone had nothing to do with the letters being generated and sent to Plaintiff, or the telephone calls. (Ex. M, Goldman dep. pg. 61, 67, 71).

17.    Denied. Plaintiff resides with her parents, but they do not share a common phone number. (Ex. E, William Regan dep., pg. 16, 18, 20, 39-40, 28-29; Ex. F, Lisa Regan dep., pg.

29, 44).   Denied that the calls were placed to Plaintiff's parents as a result of the so-called

"coding mistake".  (Ex. M, Goldman dep. pg. 61, 67, 71).   Plaintiff's mother, Joyce, called

Abrahamsen and complained about the calls. (Ex. E, William Regan dep., and Exhibit 6 attached

thereto).  Abrahamsen has not called Plaintiff's parents since after the January 17, 2008 call.

     18.    Admitted that Attorney Bass sent a letter to Abrahamsen on April 30, 2008 to

advise them again that he represented Lisa Regan. (Ex. N).  The content of the letter speaks for

itself.

     19.    Denied as stated.  Abrahamsen did not immediately re-code the account but

waited until May 5, 2008.  (Ex. K).  Abrahamsen has not communicated directly with Plaintiff

since that time.

Date:6/30/09            *s/Theodore E. Lorenz (TEL5114)*
                                   CARY L. FLITTER
                                   THEODORE E. LORENZ
                                   ANDREW M. MILZ
                                   Attorneys for Plaintiff

                                   LUNDY, FLITTER, BELDECOS &
                                   BERGER, P.C.
                                   450 N. Narberth Avenue
                                   Narberth, PA  19072
                                   (610) 822-0781

clf\regan-abrahamsen\pleadings\pl's memo in opp to def's motion for SJ

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LISA L. REGAN,

Plaintiff,

vs.

LAW OFFICES OF EDWIN A.
ABRAHAMSEN & ASSOCIATES, P.C.
and COMMONWEALTH FINANCIAL
SYSTEMS, INC.,

Defendants.

CIVIL ACTION NO. 08-CV-5923(WY)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Defendant Law Offices of Edwin A. Abrahamsen & Associates, P.C. ("Abrahamsen")

repeatedly called Plaintiff's parents to collect on performing accounts due by Plaintiff, despite

knowing Plaintiff was represented by counsel and performing on a negotiated payment

arrangement.  Abrahamsen also continued to contact Plaintiff directly in connection with said

accounts. Abrahamsen's conduct violates the Fair Debt Collection Practices Act ("FDCPA")

prohibition against contacting third parties, against contacting consumers represented by counsel,

and against engaging in harassing and abusive conduct. 15 U.S.C. §1692c(a)(2), §1692c(b), and

§1692d.  Defendant Commonwealth Financial Systems, Inc. ("CFS"), a debt collector, is liable

for the acts of its debt collector, Abrahamsen.

Despite the mountain of evidence against it, Abrahamsen has moved for (partial)

summary judgment.   Abrahamsen admits to violating the FDCPA, but asserts it only

"mistakenly" violated the law by dunning Plaintiff directly despite knowing Plaintiff was being

represented by counsel. Abrahamsen does not in its Motion address the third party contact violations arising out of the auto-dialed calls to Plaintiff's parents, or its harassing conduct.

To be clear: this is not the typical motion for summary judgment where a defendant asserts that there is no evidence by which a plaintiff can prove her case, nor that the evidence unerringly shows defendant did not violate the law. Defendants here admit the violations. (Defs. Br. at 5). Indeed, the crux of any bona fide error defense requires the debt collector to admit the violation, but demonstrate that its conduct was "not intentional" and that it had procedures in place "reasonably adapted" to avoid such error. 15 U.S.C. §1692k(c). Abrahamsen has established neither element – both of which are inherently fact-driven jury questions -- and ignores key evidence and testimony in this matter.

For example, Abrahamsen conveniently ignores the misconduct of Michael Ratchford ("Ratchford"), Abrahamsen's managing attorney. Ratchford negotiated the payment plan with Plaintiff's counsel, yet initiated and permitted communications to Plaintiff and her parents. Abrahamsen also fails to discuss the actions of John McGraw, one of its collectors, in miscoding one of Plaintiff's accounts. Abrahamsen focuses solely on the actions of Michael Scavone, but that is not a complete picture of the breakdown at Abrahamsen resulting in these illegal contacts.

As for policies and procedures, Defendants merely rely on their collection software – but utterly fail to show how it was reasonably adapted to prevent impermissible communications with a represented party. Nor does Abrahamsen show how the program was tailored to prevent Attorney Ratchford from disregarding his communications with Plaintiff Lisa Regan's lawyer before authorizing the sending of dunning letters to her or calls to her place of employment.

But even more revealing is the testimony provided by Stevan Goldman of Commercial Legal Software, Inc. ("CLS"). Goldman, the owner of CLS and the developer of the collection

2

software used by Abrahamsen, testified that the miscoding by Scavone (or McGraw for that matter) did not cause the impermissible communications with Plaintiff. Mr. Goldman's testimony completely undercuts Defendants' bona fide error argument,[1] which appears to be nothing more than a ruse designed to avoid liablity for admittedly violating the FDCPA and to unnecessarily drive up the costs of this litigation. (Defs. Br. at 5) ("there is no dispute that these communications were a violation of the FDCPA").

For the reasons discussed herein, and supported by the record facts as set forth in Plaintiff's Counter-Statement of Material Facts (submitted herewith and incorporated herein), Defendants' motion should be denied and Plaintiff's Cross-Motion for Summary Judgment granted.

## II.    ARGUMENT

### A.  Standard of Review

Summary judgment is inappropriate unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if it would affect the outcome of the suit. *Anderson v. Liberty, Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden of supporting its motion "with credible evidence . . . that would entitle [it] to a directed verdict if not controverted at trial." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be

---

[1] Abrahamsen does not assert the bona fide error defense or otherwise challenge Plaintiff's claim based on the impermissible third party contacts arising out of the calls to Plaintiff's parents.

believed and all justifiable inferences are to be drawn in [his] favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson*, 477 U.S. at 255); *accord Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("[W]here the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true.").

Here, Defendants have failed to meet the standard for the grant of summary judgment. Rather, Plaintiff is entitled to judgment as a matter of law as to the liability claims under the FDCPA. As a result, Defendants' motion should be denied, Plaintiff's cross-motion granted, and this matter set for trial on damages.

### B. Abrahamsen's Calls to Plaintiff's Parents Violated the FDCPA's Ban on Third Party Contacts, and Summary Judgment Should be Entered for Plaintiff.

Defendants do not and cannot challenge the impermissible third party contacts asserted in this matter. Abrahamsen auto-dialed Plaintiff's parents several times at their home telephone number despite knowing, or being able to easily know, that they were calling a wrong number. Defendants had Plaintiff's location information and thus had no legitimate reason to contact third parties in the attempt to collect a debt from her. This violates the FDCPA. Consequently, judgment should be entered against Defendants and in favor of Plaintiff as to liability.

The FDCPA at 15 U.S.C. §1692c(b) generally prohibits debt collectors from communicating with third parties:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

The exception listed under §1692b relates only to securing location information. *See* 15 U.S.C. §1692b ("Acquisition of location information"). Accordingly, under §1692c(b), a debt collector may not communicate with a third party without prior consent regarding the collection of a debt, except to secure "location information" permitted under the restrictions of §1692b.

Congress recognized that the strict limitations on third party contact make it one of the FDCPA's most important protections. According to the Senate report:

> [T]his legislation adopts an extremely important protection … it prohibits disclosing the consumer's personal affairs to third persons. Other than to obtain location information, a debt collector may not contact third persons such as a consumer's friends, neighbors, relatives or employer. Such contacts are not legitimate collection practices and result in serious invasions of privacy, as well as loss of jobs.

S. Rep. No. 382, 95th Cong., 1st Sess. 4 at 4 *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699 (emphasis added). *See also Smith v. NCO Fin. Sys.*, No. 06-CV-5626, 2009 WL 1675078, *2 (E.D. Pa. June 12, 2009) (employer contact); *Romano v. Williams & Fudge, Inc.*, No. 08-CV-0684, 2008 WL 5115041 (W.D. Pa. Dec. 4, 2008) (parent contact).

Here, Defendants, through Attorney Ratchford, initiated auto-dialed calls to Plaintiff's parents in connection with the accounts on which Plaintiff was paying pursuant to a negotiated payment arrangement. (Ex. E, W. Regan dep., pg. 28-29). The auto-dialed calls left a message asking for Lisa Regan to call Defendant. (Ex. E., W. Regan dep. and Ex. 6 thereto). The message left an account reference number and a telephone number to call. (*Id.*) Defendants had no need or permission to call Plaintiff's parents. Defendants did not need location information, as Defendant already knew Lisa's address and phone number, that she was represented by Attorney Bass and she was paying on the accounts per the negotiated agreement. (Ex. B, Ratchford dep., pg. 108; Ex. D, Bass dep. pg. 18; Ex. F, L. Regan dep., pg. 44).

In addition, Defendant Abrahamsen knew or should have known that it was calling Lisa's parents, not Lisa.  On or about March 21, 2007, Plaintiff provided her telephone number to Defendant Abrahamsen in response to Interrogatories in Aid of Execution previously served in the state court action.  (Ex. B, Ratchford dep., pg. 105-106; Ex. F, L. Regan dep., pg. 44; Ex. O attached hereto).  The testimony is clear and undisputed that Plaintiff maintained her own telephone number and did not share a telephone number with her parents.  (Ex. F, L. Regan dep., pg. 29; Ex. E, W. Regan dep., pg. 16, 18, 20, 39-40).

Not only do the responses to the Interrogatories in the state court action confirm that that Plaintiff had her own telephone number, but Abrahamsen also did a skip trace which showed that the number they were calling was a number which belonged to William Regan, Plaintiff's father.  (Ex. P).  Before unleashing the robotic telephone calls, Abrahamsen did nothing to verify whether it was calling a correct number, including checking the answers provided in connection with Plaintiff's response to the Interrogatories in Aid of Execution.  (Ex. B, Ratchford dep., pg. 83).  Abrahamsen just blatantly ignored information readily available to it.

The auto-dialed calls to Lisa's parents were made in violation of the prohibition on third party contact found at §1692c(b) of the FDCPA.  Defendants offer no explanation or excuse as to why they called Plaintiff's parents, show no facts that contradict the record, and judgment should be entered in favor of Plaintiff as to liability.

### C. Defendants' Bona Fide Error Defense Regarding Direct Contacts with Plaintiff Despite Being Represented by Counsel Does Not Hold Water; Defendants' Motion for Summary Judgment Should Be Denied, and Summary Judgment on Liability Granted to Plaintiff.

The FDCPA prohibits a debt collector from communicating with a consumer in connection with the collection of a debt if the debt collector knows the consumer is represented by an attorney with respect to such debt.  15 U.S.C. § 1692c(a); *Flores v. Shapiro & Kreisman,*

246 F.Supp.2d 427 (E.D. Pa. 2002). Here, Defendants repeatedly did so and admit in its moving papers that "[t]here is no dispute that these communications were a violation of the FDCPA." (Defs. Br. at 5). Plaintiff agrees and the record reflects the same.

Defendants argue that their multiple violations of the FDCPA were the result of a bona fide error by Michael Scavone, one of its debt collectors. (Defs. Br., pg. 3-6). The record demonstrates otherwise, and reveals that Abrahamsen acted intentionally and did not have reasonable procedures in place to prevent telephone calls and dunning letters to Plaintiff when Defendants knew she was represented by counsel and knew she was paying pursuant to a negotiated payment arrangement. Defendants' motion for summary judgment should be denied, liability entered in favor of Plaintiff, and this matter set for trial on damages.

To sustain a "bona-fide error" defense, Defendants must show "by a preponderance of evidence that the violation [of the FDCPA] was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c); *Richburg v. Palisades Collection LLC*, 247 F.R.D. 457, 467 (E.D. Pa. 2008). The debt collector bears the burden of pleading and proving bona fide error. *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1514 (9th Cir. 1994); *Cook v. Gen. Revenue Corp.*, No. 01-1306, 2001 WL 893692 (E.D. Pa. Aug. 6, 2001). The FDCPA's bona fide error provision is a "narrow defense". *Richburg*, 247 F.R.D. at 467. Defendants have failed to sustain this burden.

### 1. Intentional Communications – No "Clerical Error"

In light of the concession by Abrahamsen in its own moving brief, it is stunning indeed that it would even seek summary judgment. Abrahamsen admits – indeed argues:

"The first prong of the Bona Fide Error Defense is a <u>subjective test</u> that <u>requires a credibility determination</u> concerning the debt collectors [sic] assertion that the ensuing FDCPA violation was unintentional ..."

(Ex. Q, Defs. Br. at 5) (emphasis added). Since credibility determinations cannot be made in connection with a summary judgment motion, the analysis can end there and Defendants' motion denied. *Marino*, 358 F.3d at 247.

A review of the record shows, nonetheless, that Abrahamsen's contacts with Plaintiff were *intentional*. Abrahamsen's collector, Joseph Pietrowski (a/k/a Joseph Lynch), testified that Abrahamsen intentionally tried to contact Plaintiff through a letter campaign, resulting in the March 14, 2008 and April 28, 2008 letters being sent to Plaintiff despite being represented by Attorney Bass. (Ex. H, Pietrowski dep., pg. 119, Ex. L hereto). Attorney Ratchford testified that he initiated calls and authorized letters to Plaintiff. Attorney Ratchford identified the accounts to receive auto-dialed calls and directed a letter campaign offering the economic stimulus and tax incentive settlement offers. (Ex. B, Ratchford dep., pg. 59-60, 64-65, Ex. L hereto). These are intentional acts. It is not sufficient for Abrahamsen to now assert in hindsight, and without any basis, that it did not intentionally initiate these communications. *See Piper v. Portnoff Law Assocs.*, 274 F.Supp.2d 681, 688 (E.D. Pa. 2003) ("Because the defendants intentionally [acted], the impropriety is not bona fide error.").

Abrahamsen argues the unintentional action giving rise to its bona fide error defense was Michael Scavone's so-called "clerical error" involving deletion of the "represented by counsel" diary code. (Defs. Br. at 5). That argument is directly contradicted and undercut by the testimony of Stevan Goldman, the owner of CLS and the developer of the collection software used by Abrahamsen. (Ex. M, Goldman dep., pg. 9). Goldman testified that Scavone had to "consciously" act to delete the diary code, and more importantly, that Scavone's so-called

8

"error" was not the cause of the impermissible contacts with Plaintiff. (Ex. M, Goldman dep., pg. 55, 58, 61, 67). Rather, and as more fully discussed below, Abrahamsen failed to use safeguards available in the collection software to properly note that Plaintiff was represented by counsel and to prevent direct, intentional communications with her. (Ex. M, Goldman dep., pg. 34, 41, 43-44).

Abrahamsen confuses "bona fide" and "not intentional" with carelessness and hastiness by its employees. Indeed any such error must be "bona fide" – i.e., a genuine mistake made in good faith while the collector is exercising his duty or obligation. *See Caputo v. Prof'l. Recovery Servs., Inc.*, 261 F.Supp.2d 1249, 1257 (D. Kan. 2003). Even if the conduct attributed to Scavone had some merit or basis to support Defendants' bona fide error defense, Abrahamsen conveniently ignores the fact that another collector, John McGraw, made the identical so-called "error" by deleting these codes on a separate Regan account months later. (Ex. I, McGraw dep., pg. 37-38). Scavone and McGraw deleted the counsel code on separate occasions, months apart. Scavone deleted the counsel code in the Account 1 notes in May 2007. (Ex. K (January 17, 2008 entry)). McGraw deleted the counsel code in the Account 2 notes in January 2008. (Ex. K (May 12, 2007 entry)). The fact that this deletion happened more than once cuts against it being either an "error" or "bona fide."

Both Scavone and McGraw testified that they were not assigned to work Plaintiff's accounts and that they only accessed Plaintiff's account notes on the date each deleted the counsel code. McGraw's deletion occurred when he was in-and-out of the account notes in about a minute and did not check to see if Lisa was represented by counsel as he would normally do, if the account was assigned to him. (Ex. I, McGraw dep., pg. 38-40, 42-44, 49, 61). Scavone similarly testified that, when he deleted the subject codes, he did so without doing the usual

review.[2]  (Ex. G, Scavone dep., pg. 67).  By doing a cursory, one-minute rush job on Lisa's account – when they should have given the job the attention they normally would, neither Scavone nor McGraw can be said to have been doing his job at all, let alone in good faith.  Of course, McGraw and Scavone did not have to delete the counsel code to notate each account. (Ex. M, Goldman dep., pg. 53, 56).  According to Stevan Goldman, there was no reason for either Scavone or McGraw to delete the "counsel" code to update Plaintiff's account notes.  (*Id.*)

Furthermore, Abrahamsen's claim of "clerical error" conspicuously ignores attorney Ratchford's involvement and personal knowledge.  Attorney Ratchford personally knew from his dealings with Attorney Bass that Plaintiff was represented by counsel. The letters and telephone calls initiated by Ratchford were intentional acts and attempts to contact Plaintiff.  (*See* Ex. H, Pietrowski dep., pg. 119).  Ratchford admits that he authorized the sending of the letters and the "Weisberg" blast calls.  (*See* Ex. B, Ratchford dep., pg. 59-60, 64-65).  Defendants do not pretend to argue that the so-called "Scavone error" wiped away the actual knowledge on the part of Ratchford relating to his conversations and negotiations with Attorney Bass on Plaintiff's behalf, or that Ratchford's conduct was unintentional.  Indeed, three of the phone calls (i.e., January 10, 2008, January 12, 2008, and January 17, 2008) on Account 1(#06-02273) occurred before the removal of the counsel code by McGraw on January 17, 2008.  (Ex. K).

Defendants have failed to establish that the communications with Plaintiff while represented by counsel were unintentional; rather, the record indicates the intentional nature of the contacts resulting from Defendants' failure to implement appropriate safeguards.  At best, these are questions of fact for a jury to resolve.  *Anderson*, 477 U.S. at 248.  As such,

---

[2]     Parenthetically, the fact that two collectors testified that they did not review Plaintiff's account as they typically would speaks to Abrahamsen's lack of policies and procedures reasonably adapted to prevent the type of "clerical error" Abrahamsen now claims. *See* discussion, *infra*.

Abrahamsen has not established the first prong of the bona-fide error defense and its motion should be denied.

### 2.   No Procedures Reasonably Adapted to Prevent the So-Called "Error"

Even if Abrahamsen could show that Scavone's act was a "clerical error" resulting in unintentional contacts with Plaintiff while represented by counsel, mere inadvertency is not sufficient to provide a defense. *Dutton v. Wolhar*, 809 F.Supp. 1130, 1138 (D. Del. 1992). Abrahamsen must also prove it had in place procedures reasonably adapted to prevent the so-called "error". *Richburg*, 247 F.R.D. at 467. Abrahamsen has failed to meet its burden of proof on this point as well.

Abrahamsen seems to rely exclusively on its collection software as evidence of its policies and procedures reasonably adapted to prevent the "bona fide error" it claims occurred.[3] However, the testimony of Stevan Goldman, the developer of the software used by Abrahamsen, demonstrates that Abrahamsen did not even use the software properly to prevent the impermissible communications in this matter. For instance, had Abrahamsen used the standard security features with the CLS collection software, neither Scavone nor McGraw would have been able to delete the "represented by counsel" diary code no matter how incompetently they used the software. (Ex. M, Goldman dep., pg. 29-31, 33). The software's security features are simple to use and implement. All Abrahamsen had to do was check a "protected" box when the "represented by counsel" code was first implemented to prevent everyone, with the exception of a supervisor like Attorney Ratchford, from deleting it. (Ex. M, Goldman dep., pg. 31, 33). Abrahamsen did not take this simple step as a way to prevent Scavone's so-called "clerical error".

---

[3]     Abrahamsen did not produce its collection software prior to the deposition of its corporate designee nor other witnesses. Not until after the depositions did Abrahamsen produce software manuals. Plaintiff was able to subpoena and depose Abrahamsen's software firm, CLS, on June 26, 2009.

Abrahamsen did not use the Adversary Attorney function as well. Goldman stated that with his software, the way to prevent automated letters from being sent to a represented consumer is through the use of the Adversary Attorney function. (Ex. M, Goldman dep., pg. 43-44). According to Goldman, had Abrahamsen used that function, the collection letters sent to Plaintiff on March 14, 2008 and April 28, 2008 would have been blocked. (*Id.*). There is also a Status Prompt function which Abrahamsen could have used, but did not, to quickly review whether a consumer is represented by counsel. (Ex. M, Goldman dep., pg. 79-81). Abrahamsen does not remotely discuss any of these functions, but rather relies upon the use of a diary code which Goldman referred to as a "misuse of the system". (Ex. M, Goldman dep., pg. 34 (emphasis added)). According to Goldman, the use of a "represented by counsel" diary code, such as the one used by Abrahamsen, would not filter out attempts to contact Plaintiff when represented by counsel, even if not deleted by Scavone or McGraw. (Ex. M, Goldman dep., pg. 61, 67). Abrahamsen's improper and careless use of its collection software, as well as the lack of any other policies and procedures, demonstrates that Abrahamsen did not have reasonable procedures in place to prevent the communications directed at Plaintiff while represented by counsel.

CLS is always available and ready to provide support and help to implement its security features. (Ex. M, Goldman dep., pg. 34-35). Indeed, Abrahamsen had a support agreement with CLS. (Ex. M, Goldman dep. and Exhibit CLS-11 attached thereto). However, it was not until September 2008, well beyond the incidents here, that Abrahamsen first wrote to CLS to inquire about setting up the security feature to prevent the deletion of diary codes. (Ex. M, Goldman dep., pg. 103-105 and Exhibit CLS-13 attached therto).

Rather, Defendants misleadingly argue that the deletion of the "represented by counsel" code only occurred once, by Scavone, and caused the illegal communications. (Defs. Br. at 7). Of course, Stevan Goldman, the owner of CLS, disagrees with that assessment. Goldman testified that Scavone's deletion of the "counsel" diary code did not result in the communications to Plaintiff. (Ex. M, Goldman dep., pg. 61, 67). This is further evidenced by the calls placed on Account 1 on January 10, 2008; January 12, 2008; and January 17, 2008; all prior to the removal of the "counsel" code by McGraw on January 17, 2008. (Ex. K). Abrahamsen conveniently ignores the fact that McGraw made the same deletion on another of Lisa's accounts months later, and that calls preceded the deletion. (Ex. I, McGraw dep., pg. 37-38). Who knows how many other times this same "error" was committed by Abrahamsen's collectors in any of their 30,000 accounts? Based on the evidence before it (i.e., the "error" occurred in 100% of Lisa Regan's accounts), the Court can reasonably infer that it happens regularly. When an error occurs routinely, the procedures may be found inadequate. *See Spencer v. Henderson-Webb*, 81 F. Supp. 2d 582 (D. Md. 1999) (debt collector's procedures "woefully inadequate" where computer program routinely added attorney fees charge to collection accounts regardless of underlying card agreement). Further, Defendants cannot excuse Ratchford's conduct – i.e., selecting Lisa's account for additional dunning after conversations with her counsel, as more fully discussed in sub-point 3 below.

In *Dragon v. IC Sys.*, 483 F.Supp. 198 (D. Conn. 2007), a Connecticut district court granted the plaintiff summary judgment on the defendant collector's bona fide error argument. In that case, the defendant's computer system allowed creditors to "make an entirely new placement of the account, with a different balance than the original balance on the first placement such that it was as though it was an entirely new debt", and in the process, writing-

over indications about attorney representation. *Id.* at 206 (internal quotes omitted). The court

found that defendant's system "almost invited" the error which occurred – direct contact with the

consumer in violation of §1692c(a)(2). *Id.* Since the court found defendant failed to proffer

evidence of any specific procedures to prevent this re-placement of accounts from happening, it

denied the collector summary judgment and conversely granted the same to plaintiff on the bona

fide error issue. *Id.*

Such is the case here. Abrahamsen clearly did not have reasonable procedures in place to

prevent the improper contacts with Plaintiff. (See Ex. B, Ratchford dep., pg. 102-103, Ex. H,

Pietrowski dep. 116, 132). Abrahamsen did not reasonably implement or use procedures

available to it to prevent the illegal communications. As a result, Defendants' summary

judgment motion should be denied, and judgment entered in favor of Plaintiff on liability. *See*

*Dragon*, 483 F. Supp. at 206.

### 3.  Attorney Involvement Further Undercuts Defendant's Bona Fide Error Defense

Finally, defendant's bona fide error argument fails to account for the fact of the attorney

involvement in this case. Here, an attorney at Abrahamsen, Michael Ratchford, had personal

knowledge that Lisa Regan was represented by Attorney Tom Bass. Despite this, Ratchford

selected Lisa's account for additional dunning. Defendants' reliance on their computer system

does not excuse any subsequent contact to Lisa initiated by Ratchford.

It is well-settled that the FDCPA applies stricter compliance standards to an attorney than

to a lay debt collector. *See Crossley v. Lieberman,* 868 F.2d 566, 572 (3d Cir. 1989). This is

because attorney involvement brings with it coercive power. *See Avila v. Rubin*, 84 F.3d 222,

229 (7th Cir. 1996) ("An unsophisticated consumer, getting a letter from an 'attorney,' knows

the price of poker has just gone up."). Here, letters were sent on the letterhead of the law firm

14

"Edwin Abrahamsen and Associates" and one of Abrahamsen's attorneys was directly involved in the case. Attorney Ratchford initiated automated telephone calls and approved the sending of the collection letters to her, despite having <u>personal knowledge</u> that she was represented by counsel. Ratchford was under a legal obligation to review Plaintiff's file prior to calling and/or sending letters to Plaintiff, but failed to do so. *See generally Clomon v. Jackson*, 988 F.2d 1314, 1321 (2d Cir. 1993). Further, Ratchford had an ethical and professional obligation not to communicate with an individual he knew was represented by counsel. Pa. R.P.C. 4.2. Had Ratchford discharged his obligations, these contacts could have been prevented. This breakdown clearly indicates that reasonable procedures were not in place to prevent contacts with Plaintiff when Abrahamsen knew or should have known that Plaintiff was represented by counsel. Put otherwise, Defendants cannot justify Ratchford's conduct on behalf of Abrahamsen by misuse of the software.

The sloppiness exhibited at Abrahamsen is no doubt attributable, in part, to the lack of direct involvement by Edwin Abrahamsen, the firm's sole owner. He is largely an absentee owner. Edwin Abrahamsen has not been trained to use the firm's collection software, does not provide direct training to his own employees, does not maintain an office at the firm, and only appears in person at the firm once in a while. (Ex. C, Abrahamsen dep., pg. 37-38, 44-45). Thus, Abrahamsen, as the owner of the firm, has little (if any) involvement with collection accounts and has not bothered to take steps to understand the software used by his employees or to set up procedures to prevent the deletion of account information.

Clearly, Abrahamsen did not have reasonable procedures in place to prevent the law firm from contacting Plaintiff when represented by counsel and performing on a negotiated payment arrangement. At bottom, Defendants' motion ignores huge chunks of record facts which compel

the denial of Defendants' bona fide error defense.   At best, Abrahamsen's bona fide error

defense is one he must prove to a jury.   Defendants' motion for summary judgment must be

denied.   Further, since Abrahamsen has admitted to violating the FDCPA, Plaintiff is entitled to

the entry of summary judgment resulting from Defendant's conduct of contacting her despite

knowing she was represented by counsel.[4]

### D. Defendants' Conduct of Contacting Plaintiff and her Parents is Harassing, Oppressive and Abusive in Violation of the FDCPA.

The FDCPA prohibits debt collectors from engaging in abusive and harassing collection

conduct.   15 U.S.C. §1692d.   Here, Abrahamsen's repeated calls to Plaintiff's parents and

Defendant's repeated contacts with Plaintiff while represented by counsel and paying on the

accounts, is harassing and abusive.   Defendant's witnesses agree that when a consumer is paying

on an account (even if not represented), they stop contacting the consumer.   (Ex. B, Ratchford

dep., pg. 58, Ex.G, Scavone dep., p. 44).   Further, Defendant has no reason or permission to

contact Plaintiff's parents (as discussed above), call Plaintiff at work,[5] or send her collection

letters.   Consequently, summary judgment on liability should be entered in favor of Plaintiff and

against Defendants for violating §1692d of the FDCPA.

---

[4]       While Defendant does not claim bona fide error on the issue of its calls to Lisa's parents, it could not
establish such a defense.  As discussed above, Abrahamsen did not have any procedures in place to confirm or verify
whether it was calling a correct telephone number when trying to call Plaintiff.  Abrahamsen attempted to contact
Plaintiff by calling her parents and by calling her work phone number.  However, Abrahamsen knew or should have
known that it was calling wrong numbers based upon information it had from it own records, i.e. Plaintiff's
responses to Interrogatories in Aid of Execution and skip search. (Ex. F, L. Regan dep., pg. 44; Ex. P).

[5]       While Defendant called Plaintiff at Attorney Bass' office, where she works, the calls were not directed to
Attorney Bass.  These were auto-dialed calls from David Weisberg asking Plaintiff to call him back. (Ex. D, Bass
dep., pg. 36).

III.   **CONCLUSION**

For the reasons set forth herein, Defendants' motion for summary judgment should be denied, Plaintiff's cross-motion granted and this matter set down for trial on the issues of damages.

Respectfully submitted,

Dated: 6/30/09          /s/ *Theodore E. Lorenz (TEL5114)*
                       CARY L. FLITTER
                       THEODORE E. LORENZ
                       ANDREW M. MILZ
                       Attorneys for Plaintiff

                       LUNDY, FLITTER, BELDECOS &
                       BERGER, P.C.
                       450 North Narberth Avenue
                       Narberth, PA  19072
                       610-822-0782

clf\regan-abrahamsen\pleadings\pl's counter-stmt of material facts

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LISA L. REGAN,

               Plaintiff,

        vs.

LAW OFFICES OF EDWIN A.
ABRAHAMSEN & ASSOCIATES, P.C.

And

COMMONWEALTH FINANCIAL
SYSTEMS, INC.,

               Defendants.

CIVIL ACTION NO. 08-CV-5923(WY)

## PLAINTIFF'S COUNTER- STATEMENT OF MATERIAL FACTS
## IN SUPPORT OF HER CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff hereby files her Counter-Statement of Material Facts in Support of Her Cross-Motion for Summary Judgment:

1.      Defendant Commonwealth Financial Systems, Inc. ("CFS"), a debt collector, purchased two accounts (referred to as Account 1 and Account 2) claimed due by Plaintiff Lisa Regan. (Ex. "A", Cobb dep., pg. 32).[1]  CFS sued Regan in the Court of Common Pleas and obtained a judgment on each account. (*Id.* at 32-33). The judgments were ultimately sent to the Law Offices of Edwin A. Abrahamsen & Associates, P.C. ("Abrahamsen") for collection. (Ex. "A", Cobb dep., pg. 54-55).

2.      Abrahamsen is a law firm located in Scranton, Pennsylvania and focuses solely on the collection of consumer debt. (Ex. "B", Ratchford Dep., pg. 44). Edwin Abrahamsen is the sole owner. (Ex. "C", Abrahamsen Dep., pg. 13). Edwin Abrahamsen does not maintain an

---

[1]     The Exhibits are in the Appendix attached hereto.

office at the firm, but visits the firm about 2 hours per week.  (Ex. "B", Ratchford Dep., pg. 29).

Abrahamsen says he maintains oversight of the firm's collection practice.  (Ex. "C", Abrahamsen

Dep., pg. 23-24).

      3.     Abrahamsen directly employs two attorneys, Michael Ratchford and Heather

Woodruff (Ex. "C", Abrahamsen Dep., pg. 20-21).  The balance of Abrahamsen's debt collectors

and staff are not employed by Abrahamsen but leased through a company called NETC, LLC.

(*Id.* at pg. 14).

      4.     Edwin Abrahamsen is an owner of NETC, LLC.  (Ex. "C", Abrahamsen Dep., pg.

14).  Edwin Abrahamsen is also an owner and Chairman of the Board of Directors of defendant

CFS.  (*Id.* at pg. 9).  Edwin Abrahamsen is also a partner in Abrahamsen, Moran and Conaboy, a

law firm located in Scranton, PA.  (*Id.* at pg. 8).

      5.     Michael Ratchford is the managing attorney at Abrahamsen (Ex. "B", Ratchford

Dep., pg. 9).

      6.     On February 2, 2007, Attorney Thomas Bass advised Abrahamsen that he

represented Lisa Regan.  (Exhibit "J"; Ex. "C", Abrahamsen Dep., pg. 60; Ex. "D", Bass Dep.,

pg. 17-18, 21).  Plaintiff works as a legal secretary/paralegal for Attorney Bass.  (Ex. "D", Bass

Dep., pg. 7).

      7.     Attorney Bass and Attorney Ratchford had several discussions and exchanged

several letters regarding settlement of the CFS claim.  (Ex. "D", Bass Dep., pg. 21-24).  The

lawyers ultimately agreed upon a payment arrangement for each account as confirmed in a letter

dated May 2, 2007 from Attorney Ratchford to Attorney Bass.  (Exhibit A to the Complaint; Ex.

"D", Bass Dep., pg. 23).

8.    Plaintiff has continued to be represented by Attorney Bass and has continuously made payments per the arrangement reached with Ratchford (on behalf of Abrahamsen). (Ex. "B", Ratchford Dep., pg. 108; Ex. "D", Bass Dep., pg. 18).

9.    According to Ratchford, once a payment plan is agreed upon (if the consumer is not represented by counsel), or once a consumer is represented by counsel, it is the firm's practice to stop contacting the consumer. (Ex. "B", Ratchford Dep., pg. 57-58).

10.    Despite Plaintiff's being represented by Attorney Bass, and paying consistently as agreed, Abrahamsen tried to step up the collection effort. They contacted Plaintiff directly by sending her collection letters and calling her at work, beginning in January 2008. (Ex. "B", Ratchford Dep., pg. 71-72, 125-126, and Ex. "L").

11.    Abrahamsen also placed several auto-dialed calls to Plaintiff's parents, William and Joyce Regan. (Ex. "E", W. Regan Dep., pg. 28-29 and Ex. 6 attached thereto). Although Plaintiff resides with her parents in their home, they do not share the same telephone number. (Ex. "E", W. Regan Dep., pg. 16, 18, 20 39-40); (Ex. "F", L. Regan Dep., pg. 29). Plaintiff would not receive calls or make calls using her parent's telephone. (Ex. "E", W. Regan Dep., pg. 16, 18, 20 39-40). Abrahamsen had no need or permission to contact Plaintiff's parents. *Id.*

12.    The telephone calls to both Plaintiff and her parents were initiated by Attorney Ratchford at Abrahamsen's office. (Ex. "B", Ratchford Dep., pg. 71-72, 125-126). Attorney Ratchford testified that he would select accounts to receive auto-dialed calls purporting to come from a "David Weisberg". (Ex. "B", Ratchford Dep., pg. 35-40). Ratchford refers to these calls as the "Weisberg Blast" calls. (*Id.*, pg. 45). There is no "David Weisberg". David Weisberg is a fictitious dunning name – an alias – but is not assigned to any particular collector at Abrahamsen. (Ex. "G", Scavone Dep., pg. 13; Ex. "H" Pietrowski Dep., pg. 17).

13.    Ratchford initiated calls through its auto-dialing service on Account 1 (#06-02273) on January 10, 2008, January 12, 2008 and January 17, 2008.  (Exhibit "K"); (Ex. "B", Ratchford Dep., pg. 77, 82, 114).  The notes show two sets of calls placed on January 10 and 12 (Ex. K).

14.    Ratchford then initiated calls through its auto-dialing service on Account 2 (#06-02263) on January 10, 2008, January 12, 2008 , January 17, 2008 and January 20, 2008 and February 3, 2008 (Exhibit "K"); (Ex. "B", Ratchford Dep., pg. 77, 82).  The notes show two sets of calls placed on January 10 and 12.  (Ex. "K").

15.    The calls were placed to Plaintiff's parents and to Plaintiff at her work number. (Ex. "D", Bass Dep., pg. 36).  Defendant knew it should not have called third parties (parents) and should not have dunned a represented consumer (Lisa).

16.    Plaintiff gave her telephone number to the Defendants prior to the date of these calls.  (Ex. "F", L. Regan, pg. 44).  Abrahamsen knew Plaintiff's own telephone number from the Interrogatories In Aid of Execution previously served on Plaintiff.  (Ex. "B", Ratchford Dep., pg. 105-106); (Ex. "F", L. Regan Dep., pg. 44).  Plaintiff responded to the Interrogatories in Aid of Execution (of the Court of Common Pleas judgment) on March 21, 2007, and informed Abrahamsen of her telephone number.  (Ex. "F", L. Regan Dep., pg. 44).  Plaintiff also gave her number to Carol Jacobs, the Abrahamsen collector initially assigned the file.  (Ex. "F", L. Regan dep., pg. 44).

17.    Abrahamsen also knew from a skip-trace search that they were calling a number that was registered to William Regan, and not Lisa Regan.  (Ex. "H", Pietrowski Dep., pg. 96-98 and Ex. "P" attached thereto).

18.    Abrahamsen did not bother to verify whether it was calling an accurate telephone number. (Ex. "B", Ratchford Dep., pg. 83).

19.    Abrahamsen also sent collection letters directly to the represented Plaintiff.  On March 14, 2008 and then again on April 28, 2008, Abrahamsen wrote directly to Plaintiff in connection with Account 2 (#06-02263).  (Ex. "L").  Abrahamsen wrote directly to Plaintiff in connection with Account 1 (#06-02273) on April 28, 2008.  (Ex. "L").  Although the letters appeared to come from Joseph Lynch (alias for Joseph Pietrowski), they were sent through an automated process.  (Ex. "H", Pietrowski Dep., pg. 29-30; 33-35).

20.    Ratchford drafts the letter template and then instructs Abrahamsen's IT Department to build a list of consumers to receive the letter.  (Ex. "B", Ratchford Dep., pg. 64-65).  The letters were authorized by Defendant CFS.  (Ex. "A", Cobb Dep., pg. 27); (Ex. "B", Ratchford Dep., pg. 59).  These were intentional attempts by Abrahamsen to communicate with Plaintiff.  (Ex. "H", Pietrowski Dep., pg. 119).

21.    Abrahamsen's account logs have numerous entries and codes beginning on February 12, 2007 that Plaintiff is represented by counsel and to cease and desist contacting her.  (Ex. "I" McGraw Dep., pg. 44-47 and Ex. "K").

22.    Yet on two separate occasions, two separate Abrahamsen collectors deleted the codes in the separate account notes maintained for Plaintiff showing that she was represented by counsel, and to cease and desist contact.  (Ex. "K").

23.    On January 17, 2008, John McGraw, an Abrahamsen collector not assigned to Plaintiff's accounts, deleted the "cease and desist: contact counsel" code (assigned number 502), along with 3 other codes, when he went into the Account 1 notes to remove her parent's

telephone number and add a secured payment code. (Ex. "I", McGraw Dep., pg. 37-38; Ex. "K" hereto).

24.    McGraw testified that he was in and out of the account notes in about a minute and did not review the notes to determine if she was represented by counsel as he would normally do with accounts assigned to him. (Ex. "I", McGraw Dep., pg. 38-40, 42-44, 49, 61).

25.    McGraw uses the alias Jack Jordan.    McGraw is the voice of the "David Weisberg" recordings. (Ex. "I", McGraw Dep., pg. 7-8; 9-12).

26.    On May 12, 2007, Michael Scavone (aka Michael Rizzo), another Abrahamsen collector not assigned to Plaintiff's account, accessed the Account 2 notes to record a payment and deleted the represented by counsel code at that time. (Ex. "K"); (Ex. "G", Scavone Dep., pg. 49-52).

27.    Scavone testified that if he was working Plaintiff's account as his own, he would normally review the history of the account notes and "immediately" see that Plaintiff was represented by counsel. (Ex. "G", Scavone Dep., pg. 67).

28.    Ratchford testified that it is not necessary to delete the counsel code in order to work on an account. (Ex. "B", Ratchford Dep., pg. 92, 93, 99); (Ex. "H", Pietrowski Dep., pg. 110).

29.    Abrahamsen does not have safeguards in place to prevent the impermissible contacts with a represented consumer or the improper deletion of account codes. (Ex. "B", Ratchford Dep., pg. 102-103; Ex. "H" Pietrowski Dep., pg. 116, 132; Ex. "M", Goldman Dep., pg. 29-31, 33).

30.    This is confirmed by the testimony of Stevan Goldman, the owner Commercial Legal Services ("CLS") and the developer of the collection software used by Abrahamsen. (Ex. "M", Goldman Dep., pg. 9).[2]

31.    Mr. Goldman testified that his collection software uses an "Adversary Attorney Screen" (as opposed to diary codes) to alert a debt collector's employees that a consumer is represented by counsel. (Ex. "M", Goldman Dep., pg. 23-25). Goldman stated that using the Adversary Attorney Screen is "the only way" to alert collectors and others that a consumer is represented. (Id. at pg. 26). An "A" will also appear on the consumer's account status screen each time it is accessed by a collector, or others, to indicate attorney representation. (Id. at pg. 28). CLS trains firms to use the Adversary Attorney Screen, and not diary codes, to note that a consumer is represented by counsel. (Id. at pg. 42, 51).

32.    Goldman states that it would be a "misuse of the system to use a diary code to designate an adversary attorney", like Abrahamsen does. (Ex. "M", Goldman Dep., pg. 34). Goldman referred to Abrahamsen's use of a diary code to note attorney representation as an "additional reminder" in "a funny kind of way." (Id. at pg. 41).

33.    Using diary codes, like Abrahamsen does, to indicate attorney representation yields "inconsistent" or scattered places for a collector can look to determine if a consumer is represented. (Ex. "M", Goldman Dep., pg. 65). That is why CLS trains firms to use the Adversary Attorney function. (Id. at pg. 51).

34.    If the Adversary Attorney function is properly used, automated letters – such as the ones sent to Plaintiff - will not be sent to consumers represented by counsel. (Ex. "M", Goldman Dep., pg. 43-44, 61).

---

[2]    Stevan Goldman's deposition was recently taken on June 26, 2009.

35.    In reviewing Abrahamsen's account notes for Plaintiff (Ex. "K"), Goldman stated that the deletion of the diary codes by Scavone and McGraw had nothing to do with letters or calls being automatically generated and sent to Lisa Regan.  (Ex. "M", Goldman Dep., pg. 61, 67).

36.    Goldman further stated that there was no need for Scavone or McGraw to delete the represented by counsel diary code in order to record a payment or delete a telephone number. (Ex. "M", Goldman Dep., pg. 53, 56).

37.    Goldman explained that the collection software has a security features designed to prevent a represented consumer from being contacted or diary codes from being deleted.  (Ex. "M" Goldman Dep., pg 29-30, 79-81).  For example, in addition to the Adversary Attorney function, there is also a Status function to note attorney representation, which can be quickly accessed by pressing the F4 key and which can be protected from deletion.  (*Id.* at pg. 79-81)

38.    A diary code can be protected from deletion by simply placing a check mark in the "protected" box when originally setting up the code.  (Ex. "M", Goldman Dep., pg. 29-33 and Ex. CLS-4).  Everyone, with the exception of a supervisor like Attorney Ratchford, can be prevented from deleting a code, or class of workers, like collectors, can be blocked from doing so.  (*Id.* at pg. 29-33).

39.    CLS provides a manual and support in the use and configuration of its software, so there was no impediment or reason for Abrahamsen not to implement any of these security features.  (*Id.* at pg. 34-35).  Indeed, Abrahamsen contracted for software support.  (Ex. "M", Goldman Dep. and Ex. CLS-11 attached thereto).

40.    However, it was not until September 2008, when Abrahamsen wrote to CLS asking how to prevent the deletion of a diary code. (Ex. 'M", Goldman Dep., pg. 103-105 and Exhibit CLS-13 attached thereto).

41.    Edwin Abrahamsen, the owner of the firm, does not know how his collection software operates as he never taken any training on how to use it and has never reviewed its operations manual. (Ex. "C", Abrahamsen Dep., pg. 37-38, 44-45).

42.    Had Scavone and McGraw properly used the collection software or taken the time to review the account notes, as was their practice for accounts they worked, they would not have deleted the represented by counsel code and/or cease and desist code. (Ex. "I", McGraw Dep., pg. 49-50, 60-61, 63; Ex. "G", Scavone Dep., pg. 64, 67).

43.    It is a violation of Pennsylvania's Rule of Professional Conduct §4.2 to contact an individual represented by counsel: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter…".

44.    Abrahamsen, and in particular, Ratchford, had an obligation to review Plaintiff's files prior to sending or initiating communications with her. Had a review been done, it would have easily been seen that Plaintiff was represented by counsel and the direct contacts with Plaintiff and her parents avoided.

Date: __06/30/09_____

/s/Theodore E. Lorenz (TEL5114)_____
CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ
Attorneys for Plaintiff
LUNDY, FLITTER, BELDECOS &
BERGER, P.C.
450 N. Narberth Avenue
Narberth, PA  19072
(610) 822-0781

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LISA L. REGAN,

                    Plaintiff,

          vs.                              CIVIL ACTION NO. 08-CV-5923(WY)

LAW OFFICES OF EDWIN A.
ABRAHAMSEN & ASSOCIATES, P.C.
and COMMONWEALTH FINANCIAL
SYSTEMS, INC.,
                    Defendants.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 30th day of June, 2009, the foregoing was

filed electronically and is available for viewing and downloading from the ECF system.  A copy

was also sent by first class mail, postage prepaid, to:

Edwin A. Abrahamsen, Esquire
Abrahamsen, Moran & Conaboy, P.C.
1006 Pittston Avenue
Scranton, PA  18505
*Attorney for Defendants*

Dated:  6/30/09                    /s/ Theodore E. Lorenz
                                   THEODORE E. LORENZ
                                   Attorneys for Plaintiff
                                   LUNDY, FLITTER, BELDECOS &
                                   BERGER, P.C.
                                   450 North Narberth Avenue
                                   Narberth, PA  19072
                                   (610) 668-0011